We will hear argument next in the consolidated cases 22-1268 and 22-1563. Both of them captioned, Healthier Choices Management against Philip Morris USA. Mr. Bellin. Good morning, Your Honors, and may it please the Court. We are here on appeal of the lower courts granting Philip Morris' motion to dismiss and the denial of Healthier Choices' motion for leave to amend the complaint as futile, both of which are reviewed de novo. To us, this is an alarming case. It's purely procedural, but in granting Philip Morris' motion to dismiss and denying our motion to amend, the lower court committed a series of errors in complete disregard of the most basic concepts of the rules of civil procedure. The lower court, in fact, turned the Rule 12B6 standard on its head. It accepted as true Philip Morris' conclusions in a document they drafted and a press release based on those documents, and then expressly refused to accept as true the allegations in Healthier Choices' complaint. The lower court did this not once, but twice, demonstrating an established pattern of refusing to follow the law and accept as true Healthier Choices' well-pledged facts, even when backed by expert testimony. I'm not sure you need the language which you've already begun to use that suggests a kind of bad faith or something on the part of the district court. Maybe you can just stick to why you think that under the 11th Circuit body of case law about the relationship between the allegations in a complaint and attachments in the complaint did not justify, and we can start with the initial one that you haven't, particularly, you have additional material to work with on the amended complaint, but let's start with the original complaint. Okay, so with the original complaint, we attached an exhibit for the sole purpose of showing that there are admissions. Ms. Cavallo, specifically, like, why do you think that paragraph 46, if you're relying on paragraph 46 of the original complaint, for example, could you address whether that law and whether it's not specific enough such that the MRTPA maybe would be taken as true over the allegations in paragraph 46? So when you look at paragraph 46, which is, for ease of reference, APPX 70 and 71, you see here that when we cite to exhibit J, we say, at the last couple of sentences, thus on information and belief, while defendants assert that the accused infringing product does not cause combustion of the IQOS tobacco sticks, defendants' own testing concludes that 97%, not 100%, of the harmful chemicals associated with combustion are eliminated by the accused infringing product, and the presence of 3% of two or more important combustion markers, nitrogen oxides and carbon monoxide, indicates that at least some combustion occurs when the accused infringing product is operated as designed and intended by defendants. That is a clear disavowal of the opinion that there is combustion. That is the whole point of why we put this document in. We make it clear that we're not agreeing to that. And when you look at Gill, Gill goes into great detail about what's the standard for doing something like this. We have more than met the standard. We say that we don't agree with the document itself, except for the admissions that are in the document. Both parties agree that the combustion issue is the issue that is the subject. Can I ask you another question, which is the claim refers to at least partially combusting a combustible material, and then there's a specific definition of combustion in the MRTPA that might be different than at least partially combusting, or it has a specific meaning. Is it possible that there could still be, you know, the things stated in the MRTPA could be true, while at the same time there could be infringement of this claim? Well, when you look at the MRTPA- That's kind of a loaded question. But of course, the complaint has to be the things that are asserted sufficiently specifically enough have to be accepted as true. Right. And as this court well knows, what you submit necessarily to the FDA has no bearing on the of the patent world. The patent law is different. You can see when you look at their definition, they say a combustion process is burning and the formation of smoke with solid particles and high levels of HPHCs, and that's the defining characteristic of a cigarette. That's not the definition that is being used in our patent case. So do I understand your answer that this is a second point in your favor? Your first point is that, in fact, paragraph 46 is not conclusory, but actually says we find support in the additional document for our allegation there is combustion. And moreover, combustion in the patent may not actually even mean the same thing as the term was defined in the document that was attached. Yes, that was one of our points in our briefs that we said that the court had to accept as true the definition of combustion in defendant's document in order to then weigh the analysis, which the court was not allowed to do. And we said, as this court well knows from NALCO, that doing claim construction at the pleading stage is frowned upon at best. And so, yes, that we have more than disavowed the document in paragraph 46. We told the court what the limited purpose was for it. And in order to take theirs as true, first of all, the problem is in order to take it as true, you can only take it over. How do you distinguish the Griffin case? Are you familiar with that case? I am. How do you distinguish it? Go ahead. So the Griffin case happened before Saunders. And in the Saunders case, what the court said is if you attach something and you say that it's not true, then it's not true for purposes of looking at the complaint. So Griffin said Griffin was before Saunders, didn't have the benefit of Saunders or Heflin for that matter. And Griffin said when the exhibits attached to the complaint contradict the general and conclusory allegations of the pleading. These are not general and conclusory allegations when you look at paragraph 46. And I'm sorry, at that point, these are not conclusory, doesn't depend on the later precedent. Correct. That would be a freestanding distinction of Griffin. Absolutely, Your Honor. That is the law. But there is an exception that was created in Saunders that says if you attach a complaint and you specifically say we're not attaching it for the truth and we're disavowing that part of it. Attach an exhibit to a complaint. Exactly. Yes, Your Honor. Sorry. If you're attaching the exhibit to the complaint and you're not adopting the conclusions in it and you're specifically saying you're not adopting the conclusions, then it cannot be used for the truth of the matter asserted. So the Griffin court did not have the benefit of Saunders. And when you look at Heflin, Heflin had some of the same problems. And the court specifically says in Heflin, if I might grab it, it's something to the tune of in a footnote, the court says the district court did not have the benefit of Saunders when it dismissed Mr. Heflin's second amended complaint. Again, that's the thing. There is this case law that says if you have a complaint and you attach an exhibit, but you say it's not true and you show what you're using it for, then you can't take the document for the truth, even if it was general and conclusory, which in ours it isn't. Do you think hypothetically it would be enough to just say it's not true? Do you also have to say it's not true and give a plausible explanation for why it's not true? So that's an interesting question, because in Heflin, what the court did is it looked at what the complainant said in the complaint specifically, as it was a little bit done in Gill as well. And the burden is very low. But I think if you say it's not true, I think that's probably a good start. But I think it would help to do what we did in paragraph 46, which is to say, why isn't it true? What is the part that you're disputing when you're attaching it? And that's very clear that we did that in paragraph 46. So we believe that that was a mistake in the first original complaint. But then once you get to the amended complaint, it's not attached. It's a whole different game. And what's interesting is in the first order, the court said that if the defendants had issued their brief, the court's exact language was APX 12, even though the court indubitably could have not considered it had defendants attached it to their motion to dismiss. And then the court drops a footnote and says that there's no way that the court can use it for the truth of the matter asserted. While the district court may take judicial notice of matters of public record when ruling on a 12b-6, the documents may only be considered to show their contents, not to prove the truth of the matters asserted. So first our position is, once the document is not attached to our amendment. Do I remember correctly? Just correct me if I'm wrong, that in the district court's second opinion denying the Philip Morris document is no longer attached, but it is essentially referred to. And one of the things that you can do outside the four corners of a complaint itself is to look at the material that is referred to. And so it doesn't matter that it wasn't attached. The court did say that. The court. Is that incorrect? As a matter of what? It is. It is. I mean, the court, again, could take judicial notice of it. There is no point in time that the court can take a document for the truth of the matter asserted when there are facts that establish. But that's independent of whether it's attached to that. Right. It's independent of whether it's attached or not. But the court. The court's finding there was also an error. There is nowhere that we talk about those documents. The fact that you say the product is FDA approved. I mean, that's said in every single Hatch-Waxman case. You know, for a minute, let's just assume that there was no error there and that document was central. And so it would be attached or considered to be attached to the emetic complaint, as well as your expert's declaration. Right. And so there, would you still contend, even if it were attached, that the emetic complaint should have been allowed to be entered? Because even under 11th Circuit law, there was a lot of specificity in the expert's explanation for why there was infringement that would respond to any statements made in the MRTPA. Absolutely, Your Honor. There were five pages of explanation in our amended complaint going over details of just combustion. And then we attach the declaration. You see in the declaration the excruciating detail of how much testing. He tested an actual product, even though the defendants say he didn't. His declaration is clear that he tested the actual product. And he did puff tests. He showed a picture of the charring and the black and the ash. That more than meets it. The other problem is there's not a single case that we've seen from the defendants that says, even if you could somehow look at their document, that you could take it for the truth of the matter asserted, weigh the evidence, and then decide you've lost. That's not the analysis at a 12B6. A 12B6 is we said there's combustion. We have five pages of combustion. We don't have anything attached here, too. And that's the end of the analysis. Do you have a plausible complaint? Not is the court going to take their document for the truth and make their document irrefutable, basically dispositive, and decide the case. We put enough evidence in, as this court well knows, we put enough evidence in our amended judgment, more or less, an amended complaint. Now, I've used a lot of time that I didn't plan to use. So I will either... Right. If it turns out that you need more time than you get. But as I understand, the attorney's fees order falls if the dismissal and denial of amendment fall. That is correct. Right? That is correct. Maybe you can leave it at that for now. We can leave it at that for now. And then we can turn to the issue of the reassignment. There's an extraordinarily high standard for that, right? There is a very high standard for that. That is true, Your Honor. But what we're seeing is we're seeing a court that cites the law in both opinions, the first two opinions. Suppose I thought that there was at least language in some of the 11th Circuit precedent that it is easy to understand how the court would, in complete good faith, without any aspersions being cast, come to the conclusion that it did on the merits. But that we think, for a couple of reasons, that just has to be reversed. Do you really think that the 11th Circuit standard for reassignment would be met? I do, Your Honor. When you look at the opinion that the court made, we're at the pleading stage, right? We put in an amended complaint with an expert declaration. That doesn't happen very often. We more than meet the standard, by far. And then you see this opinion on the fees where, again, we're at the pleading stage. They haven't answered yet. And the court is finding that our allegations of combustion are so frivolous, so lacking in merit. But you're intending that you just get reassignment whenever the court gets something wrong? Absolutely not. Absolutely not. Tell me what is different in terms of your reassignment argument. We have a pattern here of the court knowing the law, refusing to follow it twice, and then saying that our case was so frivolous. The court used words, knowingly baseless. Are two cases really establishing a pattern? I mean, two opinions? I'm just, it's at the beginning stages of the case, and I'm just questioning the pattern. That's why we haven't seen any cases that do this, because this never really happens where you don't have this, at the pleading stage, a lack of following the basic principles. Actually, we do see situations all the time where courts have erred in making decisions below, and then parties ask the case to be transferred to a new judge. It happens more frequently than you might expect. It's very rarely granted, because there has to be a showing of true bias. Often, that's not shown just through being reversed. Your Honor, I think there are three factors that go toward the reassignment issue. I don't think that true bias, it may end up that the court is looking for true bias, and we are in no manner saying that there is bias here. We have no way to say that. What we're saying is, we've seen two orders where the court said what the law is, refused to follow it, and then takes an amended complaint that we believe any court should see is way more than what you need, and calls our conduct knowingly baseless, studied ignorance. These are not words that the court is using for legal standards. These are how he's describing the client's conduct. He says, quote, the court has no trouble concluding that this case is exceptional. Let me just ask a few housekeeping questions before you take a seat. Okay. In terms of, if we agree with you on the terms fees issue, for example, do you agree that we don't need to reach your arguments on exceptionality? If you agree that we don't, if there's no fees, then those issues are moved. And then also housekeeping, should we anticipate an appeal related to the outcome on the IPR? Just trying to look down the line. Without waiving attorney-client privilege, our time isn't up yet, but I think that would be a confident yes, we will be appealing. Yes. Why don't you save the remaining time for your thought? Okay. Thank you very much, Your Honor. Okay. Mr. Grant. Max Grant for Philip Morris. There has been no disavowal here. What HMC has done doesn't come close to meeting the standard for what constitutes a disavowal. I'm sorry, I'm sorry. Why are we talking about disavowal? Disavowal. There has not been a disavowal. I'm lost. Disavowal of what? Disavowal of Exhibit J to the original complaint. Okay. So to step the court through, right? Under Griffin, if exhibits are attached to a complaint, they're essentially viewed as adopted allegations. And as the court knows, detailed allegations take place. How do you distinguish Sanders? So Sanders attached exhibits to explain why they were false. In this case, Your Honor, HMC has never denied reliance. They say in their reply brief, I'm sorry, they say in page 20 of their reply that they disavowed, and they cite the appendix at 996, 997. But if you look at that, all they say is HMC's reliance on Exhibit J has been expressly disavowed. I'm sorry, can I need to ask you a question? Sure. Are you talking right now about the original complaint, the amended complaint, or whether the MRTPA should be considered in conjunction with the amended complaint? Yeah. That's right. I'm a little lost. The last. So if the document is authentic, no dispute, and it's central, disputed, but carefully analyzed by the district court, then it can be considered in part of the futility analysis in the amended complaint, provided that it's not disavowed. Here, they contend, and you asked a variety of questions about their disavowal, but it hasn't been disavowed. Sanders. Let's assume you're right for a minute. OK. Even assuming you're right, I'm not sure that you're going to be successful, to me. So that's why I want to just make sure. I definitely want to answer your question. So my question is, why aren't the contentions in the expert report and the further discussion in the complaint sufficient, at least at the Rule 12b-6 stage, in conjunction with that MRTPA? Sure. Let's address the expert declaration to start. The Diebel affidavit doesn't create a factual issue. He didn't analyze an ICO's product as it's intended to be used. What he took was he took the tobacco heat sticks, divorced from the system, cut them into slices, put them in an oven at 950 degrees. He didn't test the device itself. And under the Varela versus Gonzalez case, which is a Fifth Circuit case cited on page 47 of our brief, there, in an identical situation, an amended complaint, there the second, attached an expert report. The district court evaluated the content of the report, but the complaint still didn't survive Twombly, Iqbal, because it was impossible, implausible, sorry, to infer a necessary element of the claim, even if you credit the factual allegations in the report. It's the same here. Even if you consider the Diebel declaration, everything he says is either irrelevant, heating slices of a heat stick that has nothing to do with how... I have a question. Where's the 900 degrees? Because I saw 250 degrees. And there was discussion, I mean... No, Your Honor. It's 950 degrees, and I'll get you the site. But if you look at the appendix at 932 to 33, we have a chart that lists the specific statements, adopted allegations, in the original Exhibit J that render the Diebel conclusory statements not plausible. The appendix is at 703, which is where you get the 950 degrees. So everything that Diebel says is either irrelevant, because he sliced up tobacco and put it in a 950 degree oven, or it's conclusory, just like statements in paragraph 46. So there was a lot of question about paragraph 46. Exhibit J, as I understand the 11th Circuit law, was essentially adopted allegations. They're detailed allegations, and they take precedence over conclusory ones. Those detailed allegations... Can we look at 46? I mean, I've seen a fair number of complaints, and I don't know if I would consider that to be conclusory. I want to maybe look at that in the surrounding field just a little bit. Sure. What it does, Your Honor, is it lifts a quote out of Exhibit J, right? It cites the aerosol contained substantially lower levels of HPHCs compared to cigarette smoke, and it talks about the reduction of 97%, just so we're clear. What appendix page? I want to make sure we're all on the same page. Yeah, appendix at 71, Your Honor. Okay. The 3% is ambient air. The 3%, the reduction to 97, means it's at the same level as ambient air. And while that statement may look detailed to you, it's taken directly from Exhibit J. And what Exhibit J takes that same statement and reaches scientifically based the exact opposite conclusion that that is evidence that there is no combustion. Now, what the plaintiff is relying on here is a quote from Exhibit J out of context and the conclusory statement that, aha, this must mean combustion. If you read Exhibit J, which was adopted as a detailed pleading, part of the pleading and part of the plaintiff's original detailed allegations, those detailed allegations state just the opposite. So all the cases that were being referred to, hopefully, where there were notices on a derelict sailboat where the sailor denied receiving notice. We didn't talk about Dresdner Bank, but that was a contract that was rejected. The plaintiff refused to sign it. I just want to ask you, going back to paragraph 46, I hear what you're saying. You're saying that this 3% is just ambient air. Yes. But I'm just looking at the material that's in front of me alone. And there's no discussion that I've seen in either the complaint or the MRTPA that says what you just said. And so the question becomes, maybe on summary judgment, they'll lose. Maybe elsewhere, they'll lose. But again, it's a very strict standard for a motion to dismiss, even under this 11th Circuit case law. So where would you suggest that I look to see that explanation that you provide? Sure, Your Honor. If you look at Exhibit J, and the appendix at 144, 148, 162, generally, actually, 145 to 148, 165 to 166, that's where Exhibit J goes through these adopted allegations. Do you have a specific sentence you want to point me to, or a paragraph? I'll get it for you, Your Honor. But my point is, Exhibit J says 10 times, in detail, backed by science, why there is no combustion. I'm treating those as allegations. And so what those allegations do is render implausible the conclusory allegation that there is combustion. What if there was a definition in the MRTPA that differed from the definition of combustion in the patent?  But if there was, just assume with me for a minute, there is. That could make a difference, right? We live in a world, patent law, where the words make a big difference. You interpret the words in the claims in light of the specification, like the statements in the prosecution history. I can see this MRTPA has a specific definition, for example, of combustion. Let me answer your first question, Your Honor, which is the appendix at 169, where Exhibit J says, when TH is used under the simulated conditions, the concentrations did not exceed their respective background concentrations. So that's what I mean when I say that 3% that we're talking about is the background concentration that's ambient air. With regards to your claim construction question, what the district court found in its initial dismissal order was that no claim construction is necessary to determine that a claim limitation requiring a combustion reaction means some combustion must occur. The court here, and we cite FAST 101, but it's in the court's other cases, has empowered district courts to resolve claim construction disputes to whatever extent is necessary. And it may well be less, this court's words, than a formal claim construction, as an aside. So you contend that the court did construe the claim? No, Your Honor. What I contend is that a claim construction, that initiating a combustion reaction can mean anything other than an absence of combustion is an implausible construction. So what the district court said is, you're required to initiate a combustion reaction. By the way, if you look at the intrinsic record throughout the patent, which is... Is that the construction? I don't know how long I'm annoying you. No, you're not annoying me, Your Honor. What I'm trying to do is get at this. I understand, but my questions are going to be important. I want to answer them, believe me. Good, okay. So in the realm of claim construction disputes, there are some that may be hotly disputed and subject to full briefing. But there may be some where somebody's trying to construe black as white. That's what's happening here. Initiating a combustion reaction, according to the patent, means igniting or burning. Can you tell me specifically what you think their claim construction is? I want to make sure I write it down. What do you think they're saying in combustion? Their claim construction, as I recall, was oxygen, combustible material, and ignition, right? Now, just for context, Your Honor, I think context and credibility is important. It's not part of the record. But in that PTAB proceeding, they took the position, and I'm quoting from their expert, the invention clearly intends the word combustion to be the same as burning. And they argued in the PTAB that a prior art device designed to avoid combustion could not meet initiating a combustion reaction limitation. So putting that aside... You have to put that aside. Putting that aside, right? From a credibility perspective, putting that aside. For purposes of seeing whether somebody's complaint is sufficient enough to proceed forward with the case. Of course. The district court found that you don't need to do a formal claim construction procedure to conclude that requiring a combustion reaction means some sort of combustion may occur. Now, if you accept the adopted allegations, which is how I'm treating Exhibit J, those allegations include 235 pages of scientific analysis, which they relied on repeatedly for the claim of infringement based on FDA authorization, for personal jurisdiction, and for meeting a variety of limitations of the claim. Accepting those allegations is true. The detailed ones, taking precedence over the conclusory allegations, the court correctly found that there was no plausible allegation of initiating a combustion reaction. So, counsel, just to go back to some of your conclusory statements, what would they have needed to do in your point of view to have a complaint that were the most exceeding standards? Yeah, so if... Look, the reality here and perhaps it's a little frustrating procedurally, is if they had not attached Exhibit J to the original complaint, I think they could have probably made out a claim. But what's important is... I'm sorry, there's a slight detour. Even if what they said referred to it in the way that the district court seemed to think was true of the amended complaint? So in the amended complaint, they... No, no, you're correct, Your Honor. So again, if they referred to it, right, then we would have attached it to our motion to dismiss and under the controlling 11th Circuit law, the court would have been appropriate to consider it. But what's important, and the Horsley decision is four square with this, Your Honor, is but for sort of relevance isn't necessary. Now, the district court found, based on the regulatory authorization being the basis of the infringement claim, that they did meet the but for claim, but that's not the test in Horsley. And I would submit, Your Honor, that... So just to get an answer to my question, though, are you saying that they should not attach it and not refer to it? Is that your answer? Correct. If they wanted to set out a complaint that would have survived a motion to dismiss if their original complaint had not referred to Exhibit J, then this would have arose on a motion for summary judgment or the like. But under the 11th Circuit's law, because they attached it, it was the basis to dismiss the original complaint. Under the 11th Circuit's controlling law in Horsley, it was a basis to deny the motion to amend as futile because it was of undisputed authenticity and it remained central, which the district court analyzed very carefully. Now, the case... Could it be clear, then, had they filed the amended complaint as the original complaint, you would think that that would not be dismissed? Yeah. Well, then I guess the question would have been as we would have referred back to the district court's analysis whether the FDA documents were referred to without citation. And I think if we credit the district court's findings that the FDA documents at least five places throughout the amended complaint, it mentions the FDA documents or the contents, then we could have had that debate. But, Your Honor, Horsley is four square. And actually, the case that's the closest is a non-precedential case, Collier. The fact pattern is four square. A complaint... Can you distinguish the Hoffman case that your opposing counsel discussed? Sure, I'm happy to, Your Honor. In that one, the sailboat owner denied that he had received a sequence of notices. He said that he had received an earlier notice, but that the subsequent notices weren't correct. And then he denied a variety of the facts that were set forth in them. But really, the crux of the decision was based on the denial of notice. Where there are cases... So, look, what you have to do to disavow under the 11th Circuit Law is you have to say what's been attached is either false or fraudulent. The testing results are untrue. You'd have to give the district court some basis to doubt the trustworthiness. Here, they've disagreed with the substance of Exhibit J. But they've never said that the Exhibit J was the result of fraudulent testing. The FDA reached the wrong conclusion. Instead, they're just simply citing what's in it and then claiming, alleging in a conclusory way, the opposite. Under the 11th Circuit Law, merely alleging the opposite doesn't constitute a disavow. And in the district court record... What are the best cases for that? The best cases for that are Horsley regarding the AP article, as well as three non-precedential decisions, Corman, Collier, and White. But put aside the non-precedential. What were the facts in Horsley? And I need to put aside all cases in which the allegation is not about the truth of an assertion in an attachment, but about what the attachment says. That is, I allege breach of contract. I attach the contract. I say that contract promises the following. At that point, we're not talking about truth of assertions. In the contract, we're talking about what the contract itself promises. So in Day, that's exactly what happened. In Day, they disputed what the court reached as a conclusion. Because U-Haul, this is now the court's analysis of the U-Haul contracts that were attached. Because U-Haul continues... Cases in which the question is, did somebody say something? Yeah, that's Horsley. Are completely different from this case. This case is not, did you tell the FDA something? But did you tell... Is what you told the FDA true or not? Let me describe Horsley. So Horsley was an allegation that oral statements made at a press conference were defamatory. The oral statements were the defamation. There were two articles. The defendant, in response, in a motion to dismiss, attached a copy of an Associated Press article and some CNN transcripts. The 11th Circuit found that the AP article was central. Now, the AP article was not the basis of the defamation claim. Fred, I don't know the case. Did the AP article say, Joe Smith said the following at the press conference? Correct. And there was no dispute about the accuracy or authenticity of the AP article. Now, distinguishing and showing what constitutes a disavow, the plaintiff in that case said, wait a minute, those CNN transcripts, those are incomplete and they don't include the statements that I'm counting on. So what the 11th Circuit said is, fine, the CNN allegations remain in the case, but now let's evaluate the Associated Press allegations. And what they did is they found the Associated Press article. And so that article, the Associated Press reporting of the oral statements was not but for necessary to prove a claim. And in that case, it could well have been the case, like it might have been the case here, that the plaintiff might have been able to lay out a claim that wouldn't have been subject to a motion to dismiss had they approached it differently. But they referred, didn't attach to the AP article in discussing their oral statements, that our AP article was attached. And what the 11th Circuit found is it was undisputedly authentic reporting on the underlying facts, underlying facts, this is using the 11th Circuit's phrase, which disproved the merits of the claim by showing that the statements alleged were not actionable defamation. Our case here, respectively, is much stronger. And in our case, I'm not relying on the merits of what's in Exhibit J. We're relying on the fact that those statements in Exhibit J were adopted allegations, detailed allegations. I mean, why do you say that the general allegation in your filing with the FDA, that let's assume there's a general allegation that we do not have any combustion. What makes you say that Paragraph 46 or anything else in the original complaint adopts that general allegation? So the distinction, Your Honor, is the allegations in Exhibit J aren't general. They're extremely detailed. Right. So I don't know. It's like a hundred and two. 235 pages. So let's assume that there are 10,000 allegations in that. Do you think that, what is it that, as a matter of law or just reading Paragraph 46 or something else, tells us that the complaint adopts all 10,000 of those allegations? Because they attached it. And that's the rule in Griffin. And that's the rule in the 11th Circuit. Because if there's a conflict between the allegations in a pleading and the exhibits, it's settled that the exhibits control. They're considered adopted allegations. So for example, Your Honor, if you had a venue dispute and somebody attached a document proving in a, let's say, in a case in Delaware, and somebody attached a document to the complaint proving that there was no incorporation in Delaware, there were no employees in Delaware, that all the operations were elsewhere. Under 11th Circuit law, it would be appropriate to dismiss that for lack of venue because despite a general allegation in the complaint, the venue is appropriate in this jurisdiction. The detailed statements take precedence over that. That's precisely what happened here. What about if in that case, you know, paragraph 46 of the complaint in this hypothetical case said what the attached document says about the following business or something is false? That's a disavowal. That satisfies the 11th Circuit law. Four square. So this comes down to whether we think paragraph 46 is beyond conclusory and instead says as to one element of the claim, namely initiate combustion, the product does do that. And in fact, we find some support in this document for that. But even without that some support, why is that not specific? It's not good enough, Your Honor, because merely disagreeing if merely disagreeing what the attached document says is false. They didn't say that. They disagreed with the conclusion that set forth on the 97 percent elimination of harmful particles. They never said it's false. They never said it's fraudulent. And they never provided enough fraudulent words. I'm just trying to understand what you're saying. Well, Your Honor, if all that's necessary is to say, well, we disagree with the attachment either to a motion to dismiss or to what we previously put in our complaint, then Day would have turned out differently. Horsley would have turned out differently. Collier would have turned out differently. There would be no cases in which a motion to dismiss was affirmed by the Eleventh Circuit. But we know that there's been a wide variety. And so that's why the Eleventh Circuit is drawing a distinction between what constitutes a disavowal. And if we look at Hoefling, Dresdner Bank, and Sanders attaching a complaint to show, I never signed this contract, that's why it's not enforceable. Or here are a variety of exhibits, and I'm going to explain to you why they're fraudulent or false. Or here's notice that they're relying on, but I never received it. That's what a disavowal is. It's disavowing something about the exhibit that allows the district court to say, you know what? I can't rely on this. But if you look at the original complaint, are you saying the following or not? That under Eleventh Circuit law, if you attach a very long document that you are presumed to be adopting every assertion in that document that you do not specifically disavow. I don't know if I need to go that far, Your Honor, but let me talk about this 97 percent. The heading of the section in which that 97 percent quote. And now you're just arguing facts about the interpretation of it, which is not a 12B6 matter. No, Your Honor, respectfully, I don't I don't think I am. The law in the Eleventh Circuit is if you attach exhibits, the exhibits control, particularly that makes. Well, I don't remember that. I thought that this was there's one category of cases in which the fact that issue is what a document says. Yes. Right. Not the truth of the assertion in the document. That's one whole bunch of things that I the defendant promised me this in the attached contract. You can read the contract. It either contains the promise or it doesn't. That's not what we're talking about. We're not talking about performatives or speech acts or that kind of thing. We are talking about about the truth of assertions that you all made to the FDA about your your product. I thought that at best, the Eleventh Circuit says if the allegation and the complaint is no more than magic word conclusory, that will do to deny a critical claim defeating specific allegation in an attachment. So I think it's that and more. And that if you look at the cases like Horsley, Day and Collier, you'll see that they're evaluating. Look, they use language in some of these cases about evaluating the facts or the evidence. I don't think you need to go that far. You just need to evaluate plausibility. With respect to Griffin, Your Honor, it's a quote where there is a conflict between the allegations and a pleading and the exhibits. It is well settled that the exhibits control. And this this quote in paragraph 46, the 97 percent quotes from a section that's entitled absence of combustion. It's it's proof in the FDA document, among much other proof, that there is no combustion. Now, putting aside this low cake for me, and I wasn't able to find it. I'm sorry about that. But I thought that there was some, at least the other side says there's a definition of combustion in your document. Where is that? Is that a JA-165? It's at the top of the page. Yeah, absence of combustion. Your Honor, respectfully, I don't think you need to. This is what you were just referring to, this headache, absence of combustion. Correct. And then it's the next sentence that gives the definition. Is that right? Well, what it defines, yes, it combines the defunct. It's right. It defines the combustion process. But, Your Honor, I don't think you need to adopt that as a definition of combustion. I think all you need to do is say to yourself, can the term initiating a combustion reaction mean something other, can it be squared with the absence of combustion? And it can't be squared. That's black and white. And there are plenty of cases where... I think I understand Healthier's choice's position to be that you have to read the MRTPA in view of this interpretation, this understanding of combustion, which they deem to be narrower than what their patent requires. I think that's what they're saying. You're right. I don't need to adopt this construction. But, Your Honor, what the patent says in the intrinsic record is burning a combustible material, igniting a combustible material, the tobacco or other ignitable material is then ignited or burned. What we know for sure, accepting the allegations in Exhibit J or through, is there's no ignition and there's no combustion, there's no burning. That's what the intrinsic record says. And what you do is, even when I look at the expert report, I have to accept everything said in the MRTPA is true. But the expert report, Your Honor, is off point because it's not plausible to infer that there's a combustion reaction. Taking at face value what's in that expert report, because it's in that expert report, is merely irrelevant. Slicing up tobacco sticks, using them outside the scope or conclusory. There is nothing in that expert report that's not either the same kind of conclusory allegation that you find in the complaint or an irrelevant testing that has nothing to do with the system. That's why the district court correctly found that it didn't render any of the allegations in the complaint plausible with regards to combustion. So, respectfully, Your Honor, I think you need to wrap it up. I will wrap it up. Respectfully, HMSE never disavowed these exhibits. It disavowed reliance. The 11th Circuit requires something different. The dismissal, the denial of the motion, amen, and the award of attorney's fees should all be affirmed. Thank you. I'll give you five minutes if you need it. Okay. Thank you, Your Honor. What you didn't hear from Mr. Grant was any cases or any citing that says that you can't take Exhibit J for the truth of the matter asserted. And then he just spent all his time telling you exactly why what he did is the same thing that the court did. They weighed the evidence. Oh, Dr. Deibel didn't do this. Oh, Dr. Deibel didn't do that. That's not the standard on 12b-6. There's five pages of combustion in the amended complaint with an attached declaration. And Mr. Grant says he didn't test the product. On pages 11 and 12 of our blue brief, we tell you where he did say he tested the product. And when you look at the declaration. Yeah, I was going to say, do you want to point us to the declaration itself? The declaration, he says, I tested a product in actual use. He did a puffing experiment. He tested the product. It's a little disingenuous to even say that, but moving on quickly about the Horsley case. The Horsley case was a defamation case where there were statements made or not. The attachment was central because it's did he did they say that or not? And Horsley was also way before Saunders. So was Day. So the issue that was being discussed in the portion of Horsley that Mr. Grant was discussing has to do with whether statements were made, not with whether they were true or not. Correct, Your Honor. Because there's no case law at all that says you can take exhibit J for the truth of the matter. Assert it because you can't. You can't even bring it in because it's not central. It's in our briefs to say why it's not central. A patent case is a properly construed complaint with an accused product. You don't need defendants self-serving statements to the FDA. What you think is potentially too narrow about the appendix page 165 definition of combustion too narrow relative to what you think combustion might mean in your patent. So basically what they're they're telling the FDA is a little combustion is no combustion under our definition because it has lower levels of HPHCs. And that's not the definition. And for Mr. Grant to say the defendants didn't rely on that definition. That's the whole basis with which they come up with their decision that there is an absence of combustion in this document. They say combustion includes high HPHCs and they have low HPHCs. So they're saying lowering the combustion is the absence of combustion. And let's understand this application is for a modified risk tobacco product. They're not saying to the government that this product is safe. They're saying it's safer. Can I ask you a different question which is I understand that there's this definition of combustion. Did you at some point proffer a definition of combustion in the proceeding? Yes. In our amended complaint to alleviate this situation we said what combustion was it is in, I'm sorry Your Honor, it is in 675. Is that what you're looking at? Yes. In paragraph 47 we say that and that's also what Dr. Dybul says combustion is. A chemical reaction that requires fuel, oxygen and an ignition source. So the district court at the motion to dismiss stage the judge, the whole purpose of Exhibit J hinges on that definition of combustion which we disagree with. So your view is there's combustion anytime there's the elements of fuel, oxygen and an ignition source? Yes. And that markedly differs  at a minimum high levels of HPHC which is what's part of their definition of combustion. What's an ignition source? A heat source in there that ignites it, you know, the heating element in the ICOS device heats it up and it creates an ignition of the heat stick. So again, when we look back again you heard a lot about weighing evidence. No claim construction, Exhibit J reaches the conclusion and it's important to understand their whole Exhibit J I'm going to interrupt you because I think we're done.  Thank you. Thank you, Your Honor.